UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS


CORBIN ARMSTRONG,                )
    Petitioner,              )
                             )         CIVIL ACTION NO.
        v.                   )         04-10587-DPW
                             )
LUIS SPENCER,                    )
    Respondent.              )


MEMORANDUM AND ORDER
February 10, 2005

In this action, Corbin Armstrong petitions for habeas corpus relief pursuant to 28 U.S.C. § 2254 from his Massachusetts state court convictions after a bench trial for acts of assault, firearm possession, and resisting arrest.  The petitioner bases his petition on the following four grounds: (1) that the trial court erred when it denied his motion for a required finding regarding intent; (2) that he was denied his constitutional right of confrontation; (3) that the judge improperly relied upon facts not in evidence to find him guilty of assault with intent to murder; and (4) that his trial and appellate counsel provided ineffective assistance.  Respondent moves to dismiss the petition, arguing that the claims presented by petitioner were procedurally defaulted.

## I. Background

The underlying criminal case arose out of a car crash and

subsequent altercations that occurred outside the home of Thomas and Patricia Fuller in Belchertown, Massachusetts.[1]  Upon hearing the crash, Mr. Fuller went outside to investigate while Mrs. Fuller contacted the police.  Mr. Fuller began dialing a phone he was carrying when he saw the petitioner limping toward him covered in blood.

The petitioner grabbed the telephone, yelling "Don't do it, fucker, don't do it", and then threw it into nearby trees.  From about ten feet away, Mr. Fuller saw a handgun in the petitioner's waistband.  The petitioner then drew the gun and pointed it at Mr. Fuller, who jumped behind a nearby tree.  As he jumped, he heard a gunshot.

Mrs. Fuller heard the gunshots and, after calling the police, went out to find her husband.  She asked the petitioner, with whom she was acquainted, where her husband was, to which he responded that Mr. Fuller was "okay."  The petitioner was still holding a weapon, prompting Mrs. Fuller to run up a hillside to safety.

A police officer arrived at the scene and was warned by Mrs. Fuller that the petitioner was armed.  The officer requested that

---

[1]The following factual recitation is a summary of the factual background provided by the Massachusetts Appeals Court in Commonwealth v. Armstrong, 54 Mass. App. 594, 595-96 (2002), which was prefaced by "[b]ased on the evidence adduced at trial, the judge could have found as follows."  Id. at 895.  "[A] determination of a factual issue made by a state court shall be presumed to be correct."  28 U.S.C. § § 2254(e)(1).

the petitioner show his hands.  He responded by firing three
shots at the officer.  Two additional responding officers began
pursuing Mr. Armstrong in the nearby woods.  The first officer on
the scene together with three state police officers followed the
other two officers into the woods when they again were fired
upon.  An estimated eight or nine rounds were fired at the
officers, who returned fire, before they found the petitioner
hiding behind a tree where they arrested him.

Petitioner was convicted in October 1999 of armed assault
with intent to murder, assault with a dangerous weapon, malicious
destruction of property, possession of a firearm without a
permit, and resisting arrest.  He appealed, arguing to the
Massachusetts Appeals Court ("MAC") the first three grounds he
argues in the instant petition.  Armstrong's conviction was
affirmed in April 2002 by the MAC.  See Commonwealth v.
Armstrong, 54 Mass. App. 594 (2002).  Petitioner filed an
application for leave to obtain further appellate review ("ALOFAR
I"), presenting to the Supreme Judicial Court ("SJC") only the
question: "What standard should an appellate court follow in
determining whether to reverse a conviction in a jury waive trial
in which the judge has relied on facts which were not in
evidence." (Pet.'s ALOFAR I Mem. 5/16/02, at 10, Resp.'s Supp.
Answer Ex. 3.)  In June 2002, ALOFAR I was denied by the SJC.
Commonwealth v. Armstrong, 437 Mass. 1104 (2002).

The petitioner's first federal habeas petition was filed in

-3-

August 2002 (Civil Action No. 02-11674).  In October 2002, I
dismissed the petition for failure to exhaust the federal
constitutional grounds in that petition.  Armstrong filed a
motion for a new trial in state court pursuant to Mass. R. Crim.
P. 30(b) in January 2003, alleging -- in addition to the three
grounds asserted in his direct appeal -- that his counsel
provided ineffective assistance.  The motion was denied and the
MAC affirmed that decision because "the defendant failed to set
forth his allegations in compliance with Mass. R. Crim. P.
30(c)(3)" which provides:

> Moving parties shall file and serve and parties opposing a
> motion may file and serve affidavits where appropriate in
> support of their respective positions.  The judge may rule
> on the issue or issues presented by such motion on the basis
> of the facts alleged in the affidavits without further
> hearing if no substantial issue is raised by the motion or
> affidavits.

The court also found, in the alternative, that "the defendant's
claim of ineffective assistance would have been properly rejected
on the merits."  Commonwealth v. Armstrong, 60 Mass. App. Ct.
1103 (2003).  The remaining grounds asserted by the petitioner
were rejected because they had been decided on his direct appeal.
Id.  Petitioner filed another ALOFAR ("ALOFAR II") in December
2003, presenting the ineffective assistance and right of
confrontation grounds to the SJC.  In January 2004, the SJC
denied the petitioner's second ALOFAR, Commonwealth v. Armstrong,
441 Mass. 1101 (2004), and the petitioner then filed the instant
petition for habeas corpus relief in March 2004.

-4-

## II. Discussion

### A. Procedural Default

Comity between state and federal courts is served by the general rule that federal courts may not review state court decisions based on adequate and independent state grounds.

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

Coleman v. Thompson, 501 U.S. 722, 750 (1991); Wainwright v. Sykes, 433 U.S. 72, 86-87 (1977); Boutwell v. Bissonnette, 66 F. Supp. 2d 243, 244-45 (D. Mass. 1999).  "It is the last 'reasoned opinion' from the state court system that governs the determination of whether a petitioner is procedurally defaulted." See Boutwell, 66 F. Supp. 2d at 245 (citations omitted). Respondent here claims that all four of the grounds presented by the petitioner are procedurally defaulted and, consequently, that the petition for habeas corpus be dismissed.

### B. Grounds Raised on Direct Appeal

#### 1. Ground One: Denial of Trial Motion Regarding Intent

In his direct appeal, petitioner raised the argument that his trial motion for a required finding regarding his intent to kill Mr. Fuller was improperly denied.  It was the first argument heading listed by petitioner in his brief to the Appeals Court

framed as follows:

> It was error to deny the defendant's motion for a required
> finding of not guilty on the indictment charging an intent
> to murder Thomas Fuller where the evidence was equally
> consistent with an intent to disable the portable telephone
> because Mr. Fuller did not see where the bullet went when
> the defendant fired his gun a few feet away from Mr. Fuller,
> and the physical evidence indicated that the bullet actually
> struck a portable telephone which was lying on the ground.

The MAC rejected the argument, finding that "there was ample
evidence to support the charge of assault with intent to murder
Fuller." Armstrong, 54 Mass. App. Ct. at 599.  In ALOFAR I,
petitioner apparently abandoned this ground, exclusively pressing
the ground relating to the judge's alleged reliance on facts not
in evidence to support a finding of intent to kill.  The only
passages from ALOFAR I that bear any apparent relation to this
first ground is his recounting of the fact that the "cellular
phone had a bullet hole in it and a bullet was found underneath
it" and the related contention that "it was reasonable to
conclude, on the basis of the physical evidence, that the
defendant had shot the cellular phone in the incident involving
Thomas Fuller" as well as a reference to his intent to kill
"Thomas Fuller and five different police officers."  The brief
recited that "the defendant filed a motion for directed finding
on the charge of assault with intent to murder Thomas Fuller
because Fuller had only heard one shot fired and had not seen
where the bullet went."  These observations were offered,
however, in the context of his argument regarding the judge's

reliance on the opinion of an expert who never testified, not in the context of the argument regarding the insufficiency of the evidence as it specifically related to Thomas Fuller.

To be sure, the ground regarding whether there was sufficient evidence to find intent to kill Mr. Fuller is in a general sense related to petitioner's argument -- presented to the SJC -- regarding reliance on facts not in evidence to find intent to kill.  But the arguments and grounds are essentially independent and petitioner plainly abandoned in ALOFAR I the separate ground relating to his intent to kill Mr. Fuller by failing to "fairly present -- or do his best to present -- the issue to the state's highest tribunal." Mele v. Fitchburg, 850 F.2d 817, 820 (1st Cir. 1988).  And, to the extent that ground is subsumed in the argument regarding the judge's reliance on facts not in evidence, it will rise and fall with the analysis as to that ground below.

Petitioner abandoned the intent ground in ALOFAR II as well. The intent ground did reappear in his Appeals Court brief on appeal from denial of his motion for a new trial, where he again argued  -- under a distinct heading -- that his motion for a required finding was improperly denied by the trial judge.  The MAC rejected this ground -- along with the two others raised in his direct appeal -- because it had previously been decided. Once again, petitioner did not present this argument to the SJC. Consequently, it is clear that the petitioner did not exhaust

this ground as an independent basis of review.  Moreover, the denial of the motion for new trial due to the resolution of the ground on direct appeal serves as an independent and adequate state ground of procedural default regarding the claim.

In any event, regardless of procedural default and exhaustion considerations, I can see no basis for disturbing the MAC's finding that "there was ample evidence to support the charge of assault with intent to murder Fuller."  <u>Armstrong</u>, 54 Mass. App. Ct. at 599.[2]

2.  <u>Ground Two: Right of Confrontation</u>

Petitioner's second ground here, and in his direct appeal, was that he "was denied his constitutional right of confrontation" when the judge limited his cross-examination of a state trooper.  Petitioner claims he would have asked questions establishing bias on the part of the officer.  Petitioner

---

[2]I note that
    habeas relief is available only if the states court's
    decision was contrary to or an unreasonable application of
    federal law.  With respect to sufficiency of the evidence
    claims, the Supreme Court has held that this Court must
    determine whether, 'after viewing the evidence in the light
    most favorable to the prosecution, <u>any</u> rational trier of
    fact could have found the essential elements of the crime
    beyond a reasonable doubt.'"
<u>Neverson v. Bissonnette</u>, 242 F. Supp. 2d 78, 93 (D. Mass. 2003)
(quoting <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979))
(citations omitted) (emphasis in original).  Moreover, "[h]abeas
relief is not warranted . . . simply because evidence may support
'other hypotheses more congenial to a finding of innocence.'" <u>Id.</u>
at 94 (citing <u>Hurtado v. Tucker</u>, 245 F.3d 7, 19 (1st Cir. 2001),
quoting <u>United States v. Olbres</u>, 61 F.3d 967, 970 (1st Cir.
1995)).

sufficiently signaled the presence of a federal question in relation to this ground, citing Supreme Court precedent and concluding that the limitation on his cross-examination violated his right of confrontation under the Fourteenth Amendment.  The MAC rejected this claim, citing Massachusetts precedent.

Notwithstanding petitioner's argument at the MAC, he did not provide the SJC with an adequate opportunity to take up the issue.  Although, as noted by the First Circuit in Scarpa v. Dubois, 38 F.3d 1 (1st Cir. 1994), a petitioner's earlier submissions provide a "backdrop" for evaluating later ones on appeal, id. at 7, the only reference to the right of confrontation in ALOFAR I is petitioner's contention that his right "under Amendment Fourteen of the United States Constitution, to confront the witnesses against him . . ." was violated.  (Pet.'s ALOFAR I, at 18.)  This argument concludes a memorandum devoted to the ground that the judge relied on facts not in evidence.  Therefore, it must be interpreted as an argument that his right of confrontation was violated in relation to his inability to cross-examine a government expert who never testified.

The right to confrontation argument -- as a separate ground regarding the limitation on cross-examination of a state trooper -- did return in petitioner's arguments to the MAC on appeal from the denial of his motion for a new trial.  The MAC rejected the

ground because it had already been decided on direct appeal. Petitioner's ALOFAR II did contain this ground and the SJC affirmed the MAC's decision without opinion.  Consequently, I find petitioner's separate confrontation argument regarding the state trooper has been procedurally defaulted.  Here again, I also find no basis for disturbing the Appeals Court' rejection of the issue on the merits in the direct appeal.

### 3. Ground Three: Reliance on Facts Not in Evidence

In petitioner's direct appeal, the MAC rejected the ground that the trial judge impermissibly based a finding regarding intent to kill on facts not in evidence.

Generously treating petitioner's claims, I find this ground was presented to the SJC as a federal constitutional issue in ALOFAR I through the following question: "What standard should an appellate court follow in determining whether to reverse a conviction in a jury waive trial in which the judge has relied on facts which were not in evidence."  After presenting his argument regarding the judge's purported reliance on an expert who did not testify and a review of the evidence demonstrating a lack of specific intent, petitioner contended that his "state and federal constitutional rights under article 12 of the Massachusetts Declaration of Rights and Amendment Fourteen of the United States Constitution, to confront the witnesses against him and to be convicted on evidence presented in open court, were violated."

Because petitioner seeks relief under 28 U.S.C. § 2254, he

-10-

must exhaust all available state remedies before seeking habeas

relief in federal court.[3]  This requirement "promotes comity"

between the state and federal systems, "ensur[ing] that state

courts have the first opportunity to correct their own

constitutional errors." Mele, 850 F.2d at 819.  "[T]he applicant

is at risk to present the state courts with a fair opportunity to

confront and correct an alleged infirmity.  It is not enough

merely to raise an issue before an intermediate court; one who

seeks to invoke the federal habeas power must fairly present --

or do his best to present -- the issue to the state's highest

tribunal." Id. at 820 (citations omitted); see Barresi v.

Maloney, 296 F.3d 48, 51 (1st Cir. 2002) ("[T]he petitioner must

---

[3]28 U.S.C. § 2254 (b) & (c):
(b)(1) An application for a writ of habeas corpus on
behalf of a person in custody pursuant to the judgment of a
State court shall not be granted unless it appears that--
    (A) the applicant has exhausted the remedies available
    in the courts of the State; or
    (B) (i) there is an absence of available State
    corrective process; or
    (ii) circumstances exist that render such process
    ineffective to protect the rights of the applicant.
(2) An application for a writ of habeas corpus may be denied
on the merits, notwithstanding the failure of the applicant
to exhaust the remedies available in the courts of the
State.
(3) A State shall not be deemed to have waived the
exhaustion requirement or be estopped from reliance upon the
requirement unless the State, through counsel, expressly
waives the requirement.
(c) An applicant shall not be deemed to have exhausted the
remedies available in the courts of the State, within the
meaning of this section, if he has the right under the law
of the State to raise, by any available procedure, the
question presented.

show that 'he tendered his federal claim [to the state's highest
court] in such a way as to make it probable that a reasonable
jurist would have been alerted to the existence of the federal
question.'") (quoting <u>Casella v. Clemons</u>, 207 F.3d 18, 20 (1st
Cir. 2000), quoting <u>Adelson v. DiPaola</u>, 131 F.3d 259, 262 (1st
Cir. 1997)).

Although the First Circuit's decision in <u>Mele</u> could be read
to require that the federal constitutional grounds must be found
within the four corners of the petitioner's ALOFAR, the court has
"never held that appellate review is confined to an examination
of that pleading in isolation." <u>Barresi</u>, 296 F.3d at 52.[4]
"[T]here are myriad ways in which a petitioner might satisfy his
or her obligation to fairly present a federal constitutional
issue to a state's highest court.  They include:

> '(1) citing a specific provision of the Constitution; (2)
> presenting the substance of a federal constitutional claim
> in such a manner that it likely alerted the state court to
> the claim's federal nature; (3) reliance on federal
> constitutional precedents; and (4) claiming a particular
> right specifically guaranteed by the Constitution.'"

---

[4]<u>See also</u> <u>Scarpa v. Dubois</u>, 38 F.3d 1, 7 n.3 (1st Cir.
1994):
> The Commonwealth makes much of the fact that these cases
> [cited by petitioner] were not cited in the alofar, and
> insists that <u>Mele</u>, 850 F.2d at 823, requires a federal court
> to restrict the exhaustion inquiry to that document.  This
> crabbed reading of <u>Mele</u> wrenches the case out of its
> context.  There, the defendant raised his constitutional
> issue before the intermediate appellate court, abandoned it
> in his alofar, and then attempted to raise it anew in his
> habeas petition.  <u>See</u> <u>id.</u> at 818-19.  In contrast, Scarpa
> has consistently asserted his ineffective assistance claim.

Id. (quoting Gagne v. Fair, 835 F.2d 6, 7 (1st Cir. 1987)); see
Scarpa v. Dubois, 38 F.3d 1, 8 (1st Cir. 1994) ("The guidelines
we have promulgated in respect to exhaustion are intended to be
instructive, rather than to comprise the sole corridors through
which the 'actual embodiment of fair presentation' may pass.")
(quoting Nadworny v. Fair, 872 F.2d 1093, 1097 (1st Cir. 1989)).
In Nadworny, the First Circuit "mentioned a fifth possibility,
namely, the assertion of a state law claim that is functionally
identical to a federal claim."  Scarpa, 38 F.3d at 6.

In sum, petitioners have the burden of sufficiently
presenting their federal questions to the state's highest court,
but evaluating whether they have done so is not to be an overly
formalistic endeavor.  For example, in Scarpa, "by identifying
the Sixth Amendment in his motion for a new trial, petitioner
'cite[d] a specific provision of the Constitution,' and, at the
same time, provided a backdrop against which his later filings
had to be viewed." Id. at 7 (internal citation to Gagne omitted).

Petitioner's reference in ALOFAR I to the Fourteenth
Amendment and the right to confront an expert witness arguably
presented the federal basis of his appeal of this issue to the
SJC.

Turning to the merits, I recognize that the standard for
federal habeas corpus review of state court decisions was altered
by Congress in 1996 when it passed the Antiterrorism and

Effective Death Penalty Act ("AEDPA").  <u>See</u>  <u>Williams v. Taylor</u>,
529 U.S. 362, 404 (2000).  Pursuant to AEDPA, a district court's
power to grant the writ of habeas corpus with respect to claims
previously adjudicated by the state courts is restricted.
Section 2254(d)(1) provides that the writ can be granted only if
one of two conditions exists.

> An application for writ of habeas corpus ... shall not be
> granted with respect to any claim ... unless the
> adjudication of the claim resulted in a decision that was
> contrary to, or involved an unreasonable application of,
> clearly established Federal law, as determined by the
> Supreme Court of the United States.

28 U.S.C. § 2254(d)(1).

In <u>Williams</u>, the Supreme Court identified two distinct
questions to determine whether a writ of habeas corpus is
warranted under 28 U.S.C. § 2254(d)(1).  <u>See Williams</u>, 529 U.S.
at 412-13; <u>see also</u> <u>McCambridge v. Hall</u>, 303 F.3d 24, 35-36 (1st
Cir. 2002).

The first asks whether the decision was "contrary to"
established federal law, <u>i.e.</u>, whether the law "contradicts the
governing law set forth in [Supreme Court] cases." <u>Williams</u>, 529
U.S. at 405.  This prong is limited to situations in which the
state court applied a rule that is contrary to the governing law
set forth in the cases or where the state court faced facts that
were materially indistinguishable from a decision of the Supreme
Court but came to a different result.  <u>Id.</u> at 405-06.

-14-

The second prong of the analysis asks whether "the state court identifie[d] the correct governing legal principle from this Court's decisions but unreasonably applie[d] that principle to the facts of the prisoner's case." Id. at 413.  This may occur

> 'if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case,' or 'if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'

Kibbe v. Dubois, 269 F.3d 26, 36 (1st Cir. 2001) (quoting Williams, 529 U.S. at 408).  The Court's definition of "unreasonable application" occupies a middle ground, rejecting (1) as excessively deferential, a subjective test asking whether there exists a "reasonable jurist" who would decide the case as the state court did and (2) as overly strict, a test asking whether the underlying application of federal law was objectively correct.  Williams, 529 U.S. at 409-11.  Instead, the federal habeas court must determine whether the application by the state court was an "objectively unreasonable" application of clearly established federal law.  Id. at 409.[5]  The First Circuit has

_____

[5]In Ouber v. Guarino, 293 F.3d 19 (1st Cir. 2002), the First Circuit held that, while the AEDPA "requires that the relevant legal rule be clearly established in a Supreme Court holding, rather than in dictum or in holdings of lower federal courts," lower federal court decisions are not "wholly irrelevant to the reasonableness determination":
'To the extent that inferior federal courts have decided

interpreted this standard to mean that "'if it is a close
question whether the state decision is in error, then the state
decision cannot be an unreasonable application.'"  L'Abbe v.
DiPaolo, 311 F.3d 93, 98 (1st Cir. 2002) (quoting McCambridge,
303 F.3d at 36).  While it is still the sole domain of the
federal courts to say what the law is, 28 U.S.C. § 2254(d)(1)
requires deference to the state court's application of that law
to a set of facts.  Cf. Price v. Vincent, 583 U.S. 634, 635
(2003) (even if the federal courts -- including the Supreme Court
-- were to agree upon a different conclusion, a contrary state
court conclusion must be upheld so long as "it was at least
reasonable for the state court to [so] conclude.").  See also
Bell v. Cone, 2005 WL 123827 (U.S. Jan. 25, 2005).

    Here, petitioner contends that the judge's comments were
part of her findings of fact and not simply colloquy between the
judge and counsel.  It is true that the MAC's description of the
judge's statements misleadingly implies that they were made in
colloquy with counsel.  See Armstrong, 54 Mass. App. Ct. at 597.
The MAC proceeded to cite Commonwealth v. Colon, 33 Mass. App.
Ct. 304 (1992), where it found that "[c]omments made by a judge

_____

        factually similar cases, reference to those decisions is
        appropriate in assessing the reasonableness vel non of the
        state court's treatment of the contested issue.'  Reference
        to such cases may be especially helpful when the governing
        Supreme Court precedent articulates a broad principle that
        applies to a wide variety of factual patterns.
Id. at 26 (citations omitted).

                              -16-

in colloquy with counsel, particularly when counsel are permitted
to carry on for purpose of persuading the judge, are not to be
taken as a ruling of law by the judge", id. at 308, and
Commonwealth v. Milo M., 433 Mass. 149 (2001), where the SJC
noted that "it is presumed that the judge as trier of fact
applies correct principles." Id. at 152.

At Armstrong's trial, the relevant statements were actually
made not in colloquy as such but after the clerk read the court's
findings as to each count.  The judge then stated that she wanted
"the record to reflect . . . the basis for [her] findings as to
each one of the counts here, particularly those counts involving
specific intent." (Tr. 4/49; see Tr. 4/50.)  The judge proceeded
to describe the "evidence from [her] view as the fact finder",
(Tr. 4/51), putting great emphasis on the physical evidence in
the case.  After stating that the "Commonwealth has proven beyond
a reasonable doubt that the defendant was well aware . . . of
what he was doing when he fired his gun", (Tr. 4/62), the judge
made the comments regarding expert testimony at issue here:

> I draw no adverse inference against the Commonwealth
> for not calling their psychologist.  There was no
> reason to do so.  He had already reviewed the testimony
> of the Fullers and the law enforcement officers on the
> scene, which clearly established and convinced him that
> the defendant was focused in actions and on achieving
> the desired result of killing the target when he fired
> on the target.

(Tr. 4/63.

The MAC characterized her comments as "merely put[ting] on

-17-

the record her view that she would draw no adverse inferences
from the fact that the government did not use an expert witness
in rebuttal." <u>Armstrong</u>, 54 Mass. App. Ct. at 598.  It concluded
that

> [g]iven the substantial evidence tending to show the
> defendant's specific intent to kill his pursuers and the
> scant evidence to negate that intent, the judge reasonably
> may have concluded that the Commonwealth determined the
> expert testimony was not needed to satisfy the burden.

<u>Id.</u>  "In the end", the court "view[ed] her comments as her
opinion as factfinder, as to the government's tactical decisions,
not any reference to the judge's knowledge of unadmitted
evidence."  <u>Id.</u> at 599.

Although this may be an extremely indulgent characterization
of the circumstances of the judge's comments, to the extent the
MAC's description on that score is deemed to be a factual
finding, I must give it "considerable deference."  <u>Graham v.
Maloney</u>, 2005 U.S. App. LEXIS 1984, at *4 (1st Cir., Feb. 8,
2005).  More importantly, as to the question whether there was
legally sufficient evidence for the judge to find specific intent
irrespective of the expert opinion never admitted, the record
fully supports the MAC's determination that there was
"substantial evidence tending to show the defendant's specific
intent to kill his pursuers and . . . scant evidence to negate

that intent."[6]  Indeed, from a review of the trial transcript, it

_____

[6]Petitioner cites three Massachusetts cases for the
proposition that "if it is unclear whether a judge in a jury
waive trial has relied on inadmissible evidence or an erroneous
theory of law in arriving at his or her finding of guilty, then
doubts must be resolved in favor of the defendant and the case
must be reversed."  (ALOFAR I, at 11.)

     In Commonwealth v. Barrett, 418 Mass. 788 (1994), however,
the evidence had been admitted improperly and there was no way to
determine how it affected rulings on the admission of other
evidence.  See Id. at 796 (1994) (finding ineffective assistance
of counsel where defense counsel failed to move for exclusion of
substantial evidence of prior bad acts and most of the evidence
"was admitted without limitation and as direct evidence of the
defendant's guilt").

     In Commonwealth v. Kingston, 46 Mass. App. Ct. 444 (1999),
the judge, prior to convicting the defendant, issued a number of
rulings, one of which the MAC determined "may reflect a
conclusion by the judge, based on his weighing of the evidence,
that an elemental aspect of tax perjury had not been proved."
Id. at 451.  Consequently, the MAC set aside the findings, but
did not enter judgment for the defendant.  Rather it remanded the
case for further proceedings, because "the evidence viewed from
the Commonwealth's perspective was sufficient to convict."  Id.

     The third case cited by petitioner, Commonwealth v. Darby,
37 Mass. App. Ct. 650 (1994), is the most relevant here.  There,
a judge in a bench trial improperly admitted evidence.  The Darby
court stated:

     We acknowledge that a judge, sitting without a jury, in
     ruling upon the admissibility of evidence, will at times
     hear or see matters that would be excluded from a jury's
     consideration.  The judge's review of ultimately
     inadmissible evidence would not be prejudicial error where
     the judge stated that he or she either was not affected by
     the evidence or did not consider it.  Where a judge has not
     indicated whether he or she has considered improperly
     admitted evidence, "we can only speculate upon the effect of
     that evidence. When we are not in a position to say that it
     had none . . . such doubts as we entertain can only be
     resolved in favor of the defendant."  Here, however, the
     judge ruled that the photographs had "some probative value,"
     and therefore must have considered the photographs in
     arriving at the guilty verdicts. This constitutes reversible
     error. To hold otherwise, would create a danger that a jury-
     waived trial would be "reduced . . . to an informal setting

-19-

seems clear that the trial judge's conclusions regarding specific intent were based on the substantial physical and testimonial evidence that was properly before her and which she described at great length.

For these reasons, I share the view of the MAC that "while it certainly would have been better for the judge to have phrased her view of the evidence in a different way -- specifically, to have avoided any suggestion that she had been influenced by extrajudicial evidence -- [there was] see no reversible error in her remarks." Armstrong, 54 Mass. App. Ct. at 598-99.


### C. Additional Ground Raised in Motion for New Trial:
#### Ground Four:  Ineffective Assistance of Counsel

The fourth ground petitioner raises in the instant habeas petition is based on ineffective assistance of trial and appellate counsel.  Respondent concedes that petitioner was not

---

where the principles of law and justice are disregarded or perverted."
Id. at 655-56.  The court added, however, that "[t]he evidence of the defendant's guilt was not overwhelming" and "[i]n the circumstances of this case, we hold that the admission of the photographs was prejudicial error and there must be must be a retrial." Id. at 656.

Here, the expert opinion at issue was never admitted into evidence and the judge's supererogatory comments regarding evidence not before her do not warrant reversal in the face of her lengthy description of the substantial physical and testimonial evidence upon which she based her findings and which the MAC did not question.

barred from raising that ground in his motion for new trial.
Instead, respondent contends that the denial of the motion for
new trial based on Mass. R. Crim. P. 30(c)(3) was an independent
and adequate state grounds for dismissal.

> Mass. R. Crim. P. 30(c)(3) provides:

> Moving parties shall file and serve and parties opposing a
> motion may file and serve affidavits where appropriate in
> support of their respective positions.  The judge may rule
> on the issue or issues presented by such motion on the basis
> of the facts alleged in the affidavits without further
> hearing if no substantial issue is raised by the motion or
> affidavits.

The MAC, in affirming the order denying the petitioner's motion
for new trial, found that the "trial judge properly denied the
defendant's pro se motion for new trial predicated on allegations
of ineffective assistance of counsel, for the reason, if no
other, that the defendant failed to set forth his allegations in
compliance with Mass. R. Crim. P. 30(c)(3), as appearing in 435
Mass. 1502 (2001)." Armstrong, 60 Mass. App. Ct. 1103.

Rule 30(c)(3) "require[s] the party moving for
postconviction relief to submit affidavits in support of the
motion . . . ." Commonwealth v. Conaghan, 48 Mass. App. Ct. 304,
310 (1999), vacated on other grounds, 433 Mass. 105 (2000).  The
30(c)(3) affidavit requirement is often intertwined with
discussions of the insufficiency of a defendant's showing on a
motion for new trial, which is not surprising considering the
purpose of the rule.  See Commonwealth v. Francis, 432 Mass. 353,

372 (2000) ("[T]he motion judge ruled that Borden's statements,
not being in the form of sworn affidavits, did not comply with
Mass. R. Crim. P. 30(c)(3), 378 Mass. 900 (1979), had no
corroborating circumstances or other indicia of trustworthiness .
. . ."); Commonwealth v. Crowe, 21 Mass. App. Ct. 456, 487 (1986)
("No affidavit of Little was submitted, and the judge found that
there was no showing that Little would appear or, if he did, what
the content of his testimony would be.  Even if an affidavit of
the acquitted codefendant had been submitted, it would have been
'the weakest sort of evidence,' and the judge would not have been
required to believe it.  The issue raised was not supported by
adequate evidence.") (quoting Commonwealth v. Grace, 370 Mass.
746, 752 (1976)) (citations omitted); Commonwealth v. Cinelli, 13
Mass. L. Rep. 151, 2001 WL 492316, at *5-6 (Mass. Super. Ct.,
Apr. 23, 2001).

    Here, the MAC made it clear that the "trial judge properly
denied the defendant's pro se motion for new trial . . . for the
reason, if no other, that the defendant failed to set forth his
allegations in compliance with Mass. R. Crim. P. 30(c)(3) . . .
." 60 Mass. App. Ct. 1103 (emphasis added).  And "[t]he fact that
the Appeals Court then went on briefly to discuss the . . .
substantive points is of no moment." Boutwell, 66 F. Supp. 2d at
245; see Harris v. Reed, 489 U.S. 255, 264 n.10 (1989) ("[A]
state court need not fear reaching the merits of a federal claim

in an <u>alternative</u> holding.  By its very definition, the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law.").

After addressing the Rule 30(c)(3) affidavit requirement, the MAC added that "even were [it] to reach the merits of the underlying, unverified claims in the motion for new trial, we do not believe that trial counsel's strategic decision not to call Trooper Lambert to testify was ineffective assistance within the standards of the governing law."  <u>Armstrong</u>, 60 Mass. App. Ct. 1103.  Here, again I concur in the state court's treatment on the merits.

As an initial matter, I find the petitioner satisfied exhaustion requirements by raising the ground of ineffective assistance in his motion for new trial.  As noted in <u>Scarpa</u>, "[t]he SJC has made clear that it ordinarily considers questions involving 'assistance of counsel' as coming '<u>within the meaning of the Sixth Amendment</u>,'" 38 F.3d at 7 n.4 (emphasis added in <u>Scarpa</u>) (quoting <u>Commonwealth v. Saferian</u>, 315 N.E.2d 878, 882 (Mass. 1974)).  The Massachusetts approach "is functionally identical to the federal standard."  <u>Id.</u>; <u>see</u> <u>Ouber v. Guarino</u>, 293 F.3d 19, 32 (1st Cir. 2002).

To establish ineffective assistance of counsel,[7] the petitioner here would have to demonstrate

> that counsel made errors so serious that counsel was not
> functioning as the "counsel" guaranteed the defendant be the
> Sixth Amendment.  Second, the defendant must show that the
> deficient performance prejudiced the defense.  This requires
> showing that counsel's errors were so serious as to deprive
> the defendant of a fair trial, a trial whose result is
> reliable.

Strickland v. Washington, 466 U.S. 668, 687 (1984); see North v. McDonough, 2004 WL 2966027, at *2 (1st Cir., Dec. 23, 2004) (unpublished op.) (noting that Strickland "'requires that [defendant] show (1) that [defense counsel's] performance fell below an objective standard of reasonableness and (2) that prejudice resulted.'") (quoting Tejeda v. Dubois, 142 F.3d 18, 22 (1st Cir. 1998)).

To establish prejudice under Strickland, the petitioner

> must demonstrate that there was a reasonable probability
> that but for [his attorney's] errors, the outcome of the
> trial would have been different.  For that purpose a
> reasonable probability is defined as "a probability
> sufficient to undermine confidence in the outcome."  And in
> that respect our analysis is not limited to outcome
> determination - we must also contemplate "whether the result
> of the proceeding was fundamentally unfair or unreliable."

Tejeda, 142 F.3d at 22 (quoting Strickland, 466 U.S. at 694, 700)

---

[7]The burden of establishing ineffective assistance rests with the petitioner here:  "A defendant who alleges ineffective assistance of counsel must carry the devoir of persuasion on both tiers of the Strickland test.  The same holds true of a habeas petitioner who claims that counsel mishandled his case in the state courts."  Scarpa, 38 F.3d at 8-9 (citations omitted).

(citations omitted).

Although a _pro se_ litigant is provided a measure of leeway not afforded to counsel, "he may not roam freely beyond the procedural walls of the law." _Neverson v. Bissonnette_, 242 F. Supp. 2d 78, 88 (D. Mass. 2003). It is not unreasonable for the Massachusetts courts to require sworn allegations in addition to unverified contentions in a motion in order to meet the burden of establishing grounds for a new trial. Here, it appears the petitioner has failed to meet that burden.

**D. Cause and Prejudice**

Procedurally defaulted claims may not be reviewed in federal habeas corpus proceedings unless petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." _Coleman_, 501 U.S. at 750. In order to establish cause, petitioner "must establish that 'some objective factor external to the defense' impeded his ability to raise the issue at the appropriate time, as required by the state procedural rule." _Neverson_, 42 F. Supp. 2d at 88 (citations omitted). Petitioner has not presented any reason to find cause for or prejudice from his several defaults. Specifically as to his ineffective assistance ground, as noted above, _pro se_ litigants, although afforded more leniency than counsel, are not free to

ignore procedural rules.  Accordingly, there is no need to move
to the prejudice prong.  But as this Memorandum has suggested, I
find no prejudice because I find the several challenged
determinations by the state courts correct on the merits.

Petitioner contends in his opposition memorandum that "to
apply [Mele] in these circumstances would result in a fundamental
miscarriage of justice" as "[i]t does not appear that [he] has a
collateral remedy on the state level based on ineffective
assistance of counsel."  In arguing that his claim is not
defaulted, petitioner focuses on whether he sufficiently
presented the ineffective assistance ground to the SJC.  As noted
above, however, petitioner's ineffective assistance ground was
not defaulted for failure to present it to the SJC in ALOFAR I,
but rather for failure to comply with Mass. R. Crim. P. 30(c)(3)
in bringing his motion for new trial.  Therefore, it is not the
case that he had no collateral remedy on the state level.  He
simply failed to bring the issue before the state courts in
compliance with its procedural rules.

The miscarriage of justice "exception is very narrow" and
"is available only 'in an extraordinary case, where a
constitutional violation has probably resulted in the conviction
of one who is actually innocent . . .'"  Englehart v. Raikey,
1993 WL 207773, at *10 (D. Mass., May 24, 1993) (quoting Murray
v. Carrier, 477 U.S. 478, 496 (1986)).  There is no basis for

-26-

finding, on the record before me, that this narrow exception has been met.

### III. Conclusion

For the foregoing reasons, respondent's motion to dismiss the petition of Corbin Armstrong is hereby GRANTED.


/s/ Douglas P. Woodlock
_____

DOUGLAS P. WOODLOCK
UNITED STATES DISTRICT JUDGE